## Schnabel v. Whipkey
### [Cite as 8 AOA 237]

*Case No. CA-8096*
*Stark County, (5th)*
*Decided November 19, 1990*

*Eugene Okey, Steven P. Okey, The Okey Law Firm, 337 Third Street N.W., Canton, Ohio 44702, for Plaintiffs-Appellees.*

238

*Ralph Dublikar, Baker, Meekison & Dublikar, 205 Mellett Bldg., Canton, Ohio 44702, for Defendant-Appellant.*

HOFFMAN, J.

Plaintiff-appellee in this appeal from a personal injury action is Thomas E. Schnabel; defendant-appellant is Jack Whipkey. Now follows a statement of the facts.

On the evening of July 31, 1987, defendant Whipkey and his house guest, Philip Dobran-sky, were on their way to Bolivar to purchase wasp spray. Along the way, Whipkey decided to show Dobransky a field where he had helped bail hay the prior evening and where he had previously hunted groundhogs.

Whipkey had blanket permission to hunt in this field owned by Frank Habrun and had hunted groundhogs there for the past twenty years without incident. While bailing hay the previous day, he had observed several groundhog holes, and he knew that there were many groundhogs in the field.

While driving down the lane to show the field to Dobransky, Whipkey peered across the field and observed a grayish-brown object in close vicinity to a known groundhog hole. He stopped his pickup truck, took careful aim, and fired his rifle. If developed that what Whipkey believed to be a groundhog was in fact Thomas Schnabel, wearing camouflage clothing, lying prone in the field amongst the groundhog holes. (T. Vol. 4 pp. 10-15).

Schnabel was an experienced hunter having hunted various types of game, including groundhogs, for the past 30 years. (T. Vol. 2 p. 201). He had shot over 100 groundhogs on this particular farm and had hunted groundhog in this particular field 20-30 times in the past two years. (T. Vol. 2 pp. 212, 256). It was his practice to use binoculars and a gun tripod to identify his target and shoot at a range of 50 - 400 yards. (T. Vol. 2 pp. 205, 211). On the evening of the accident, Schnabel was lying prone near the middle of the field within 10-20 feet of several groundhog holes. (T. Vol. 2 pp. 222, 263). His pickup truck was parked behind the second barn and was not visible to anyone driving up the lane from the road as Whipkey was (T. Vol. 2, p. 267). From his position in the field, Schnabel saw the Whipkey truck drive up the lane, pull near to the edge of the field and stop. He watched the two men in the truck for several minutes (T. Vol. 2, pp. 223-226, 261). His observation allowed him to scan the field, spot a groundhog, and return to viewing the truck.

The plaintiff made no attempt to signal or make his presence known to the defendants in the truck (T. Vol. 2 pp. 226-227, 261-262). The plaintiff was shot in the arm and instituted this action as a result.

After a jury trial in the Court of Common Pleas of Stark County, the jury returned a unanimous verdict in favor of appellee and against appellant, determining appellant to be 90% negligent and appellee 10% negligent. The court entered judgment accordingly, awarding appellant the sum of $90,000 in damages.

Appellant now raises the following seven assignments of error:

"*ASSIGNMENT OF ERROR NO. I.*
"THE TRIAL COURT CORRECTLY DENIED THE APPELLANT'S MOTION FOR MISTRIAL BASED UPON THE JURY VIEW.

"*ASSIGNMENT OF ERROR NO. II.*
"THE TRIAL COURT CORRECTLY INSTRUCTED THE JURY ON THE STANDARD OF ORDINARY CARE.

"*ASSIGNMENT OF ERROR NO. III.*
"THE TRIAL COURT CORRECTLY PERMITTED INTERROGATION OF WITNESSES REGARDING THE APPELLANT'S CARRYING A LOADED FIREARM IN A MOTOR VEHICLE AND DISCHARGING A FIREARM WHILE IN A MOTOR VEHICLE.

"*ASSIGNMENT OF ERROR NO. IV.*
"THE TRIAL COURT CORRECTLY ADMITTED EXPERT TESTIMONY REGARDING HUNTING SAFETY.

"*ASSIGNMENT OF ERROR NO. V.*
"THE TRIAL COURT CORRECTLY DENIED APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE DOCTRINE OF PRIMARY ASSUMPTION OF THE RISK WAS TOTALLY INAPPLICABLE TO THIS CASE.

"*ASSIGNMENT OF ERROR NO. VI.*
"THE TRIAL COURT CORRECTLY REFUSED TO INSTRUCT THE JURY ON

PRIMARY AND EXPRESS ASSUMPTION
OF RISK.

*"ASSIGNMENT OF ERROR NO. VII.*
"THE TRIAL COURT CORRECTLY IN-
STRUCTED THE JURY OF
FORESEEABILITY."

### I.

Appellant's first assignment of error centers on the way and manner the "jury view" was conducted. Even "giving" appellant the favor of a timely objection, this claim fails on its merits. No cognisable prejudice befell appellant in the conduct of the jury view at hand, permitted by R.C. 2315.02. As stated by the court:

"The only purpose of your visit is to help you understand the evidence as it is presented to you in this courtroom." T. Vol. 1, p. 154.

This first assignment of error is overruled.

### II.

This assignment of error is not well taken. As pointed out by appellee, on some fourteen (14) occasions, the trial court instructed the jury on "ordinary care" as the standard to be applied herein. The court's reference to a firearm as a "dangerous instrumentality" and that "utmost caution" is required around a loaded gun do not taint the court's instructions on the standard of care, i.e., the duty, owed plaintiff in the case *sub judice.* See *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 119. This second assignment of error is overruled.

### III.

Herein appellant claims error in evidence admitted regarding the use and handling of firearms, specifically as stated in R.C. 2923.16(A) and (B).

"(A) No person shall knowingly discharge a firearm while in or on a motor vehicle.

"(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle, in such manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

Evidence of this nature was entirely admissible; it goes directly the claim of negligence at bar. Evid. R. 401 reads as follows:

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Clearly, the carrying of a loaded firearm in a vehicle and the subsequent firing of the firearm was probative and relevant to the shooting of Schnabel. This third assigned error is overruled.

### IV.

Appellant contends error took place through the trial court's allowance of a Stark County Sheriff's Department lieutenant (Ballas) to testify as an expert on groundhog hunting.

Ohio Evid. R. 702 controls and reads as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an. opinion or otherwise."

Whether a proposed expert is permitted to testify or not rests within the sound discretion of the trial court, and a ruling on this matter "will ordinarily not be reversed *unless there is a clear showing that the court abused its discretion." Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, Syllabus 8, Emphasis added.

Applying this strict abuse of discretion standard to the instant question, no such violation arose. Ballas's experience and training on hunting and firearms were amply set forth, and he indeed qualified as an expert witness. Also see *South Union. Ltd. v. Geo. Parker & Assoc.* (1985), 29 Ohio App. 3d 197, 203.

This fourth assignment of error is overruled.

### V. & VI.

Both of these assignments of error deal with "primary assumption of the risk" and court's decision not to provide a specific jury instruction on same. Neither assignment of error is well taken.

Under Assignment of Error V, appellant argues that appellee Schnabel was "guilty" of "primary assumption of the risk" as that doctrine was carved out by our Ohio Supreme Court in *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 113-114.

Appellant argues that plaintiff Schnabel so exposed himself to a known risk that he

(Schnabel) somehow relieved defendant Whipkey of any duty not to injure him. Appellant's leading post-*Anderson* authority on this question in *Siglow v. Smart* (1987), 43 Ohio App. 55. As appellee points out, *Siglow* is easily distinguished from the instant situation. *Siglow* involved an injury to plaintiff when he (Siglow) went to help his neighbor (Smart) during a burglary at Smart's residence. The injury occurred when the "butt of a shotgun wielded by Smart in an attempt to subdue the would-be burglar struck Siglow's hand." *Siglow* at 55. Obviously the facts involved herein clearly differ from the *Siglow* "volunteer-Good Samaritan" case and appellant's reliance upon "primary assumption of the risk" as relieving Schnabel of any duty is misplaced. Also see *Collier v. Northland Swim Club* (1987), 35 Ohio App. 3d 35.

As to the jury instruction question, the court properly instructed the jury on appellee's "contributory negligence." T. Vol. IV, pp. 145-146. As stated *supra,* a specific jury instruction on "primary assumption of risk" was not warranted by the record evidence adduced at trial. Trial court would have erred had it provided the instruction sought by appellant. *See Bostic v. Connor* (1988), 37 Ohio St.3d 144, Syllabus 2.

Assignments of Error V and VI are overruled.

### VII.

By his seventh assignment of error, appellant objects to the trial court's "failure to charge on foreseeability." Appellant's brief, p. 25.

Trial court gave a full and comprehensive instruction on foreseeability. T. Vol. IV, pp. 146 (lines 4-18, 24, 25), 147 (lines 1-4, 23-25), 148 (lines 1-32), adopted from 1 O.J.I. 7.13.

This assignment of error is overruled.

For the reasons stated, all seven of appellant's assignments of error are overruled and the judgment of the Court of Common Pleas of Stark County is affirmed.

PUTMAN, P.J., and MILLIGAN, J., concur.